IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CAROLYN FRANKHANEL, JON BUCHMAN, ELLIS ESTEVEZ, RICK GORDON, MIKE KLOCKENGA, PAUL LAAVEG, MINA RAFTEE, JIM STUMBO, and ERIC NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM FILIAGA,<br><br>Defendant. | Case No. 2:11-cv-00797-SA<br><br>**MEMORANDUM ORDER AND DECISION**<br><br>Magistrate Judge Samuel Alba |

Before the court is Defendant William Filiaga's Motion to Dismiss for Lack of Personal Jurisdiction (Doc.9). Defendant William Filiaga (hereinafter "William," to distinguish him from his brother, Fasi Filiaga) asserts that he lacks the "minimum contacts" required for Utah jurisdiction to comport with due process. Having carefully reviewed the pleadings in this matter, the court orders that William's motion be DENIED.

## ANALYSIS

### A. STANDARD OF REVIEW

Where the court elects not to hold an evidentiary hearing, as it did here, "the plaintiff must only make a prima facie showing of personal jurisdiction." *Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1065 (10th Cir. 2007). "The plaintiff may meet this burden by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (internal quotation marks and citation omitted). Factual disputes are resolved in

1

favor of the plaintiff. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007).

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). When subject matter jurisdiction is based on a claim of diversity, the court will look to the state's long-arm statute to determine whether the first prong is met. *See Melea*, 511 F.3d at 1065; Fed. R. Civ. Pro. 4(K)(1). In diversity cases where the long-arm statute confers the maximum jurisdiction allowable under constitutional due process, the whole analysis is compressed into the second prong. *See* Utah Code Ann. § 78B-3-201 (2012); *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp.2d 1093, 1097 (D. Utah 2003); *Melea*, 511 F.3d at 1065.

When examining due process in the personal jurisdiction context, the court will "conduct a two-step analysis." *Melea*, 511 F.3d at 1065.

> At the first step, [the court] examine[s] whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there. If the defendant has sufficient contacts, [the court] then proceed[s] to the second step. At this step, [the court] ask[s] whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances."

*Id.* at 1065-66 (internal quotations marks and citations omitted).

These minimum contacts "may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Shrader v. Bigginger*, 633 F.3d 1235, 1239 (10th Cir. 2011). General jurisdiction requires the defendant to have made "continuous and systematic" contacts

2

with the forum state. *Id.* Specific jurisdiction requires that an out-of-state defendant "purposefully direct" his activities at the forum state and that the litigation in question arise out of those activities. *Id.*

General jurisdiction, compared to specific jurisdiction, requires a greater threshold of contacts between the defendant and the forum state. *See* 16-108 Moore's Federal Practice - Civil § 108.40 (2011)("The distinction between general and specific jurisdiction is significant because, as the Supreme Court made clear . . . the threshold of contacts for satisfying the minimum contacts requirement . . . is higher in general than in specific jurisdiction cases.") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Because general jurisdiction presents a higher bar, and because the court finds, for purposes of this decision, that this litigation arose out of William's alleged business contacts in Utah, the court will move directly to specific jurisdiction analysis.

B. SPECIFIC JURISDICTION

   *1. Minimum Contacts*

Plaintiffs allege that William's brother, Fasi Filiaga ("Fasi"), fraudulently transferred roughly $200,000 of Plaintiffs' money to William. *See* Pl.'s Complaint 3-7 (Doc. 3-3.) William contends that all disputed transfers were legitimate payments for goods and services rendered: specifically, that they were payments for "hunting trips, guns, ammunition, etc." provided by William. Def.'s Reply Memorandum 3 (Doc. 14.) William further argues that such transfers in any case are not tied to the "alleged 'fraudulent transfer or conversion' that is the heart of this matter." *Id.* at 2-3. Essentially, he attempts to draw a line between Fasi's (established) fraudulent conduct towards the Plaintiffs and William's conduct towards the Plaintiffs.

However, inherent in the Plaintiffs' current claims is the allegation that the transfers between Fasi and William were *not* legitimate. Specifically, Plaintiffs suggest that Fasi transferred money to William without getting "equivalent value." *See* Pl.'s Complaint 5-7 (Doc. 3-3). Such fraudulent transfers, if proven, implicate both Fasi *and* William.

The court also notes that Plaintiffs' claims are not bereft of support. The very fact of a transfer between "insider" family-members raises red flags. *See* Utah Code § 25-6-5(2)(2012)(listing factors relevant to inferring "actual intent" under the Utah Fraudulent Transfer Act); *see also Tolle v. Fenley*, 132 P.3d 63, 69 (Utah Ct. App. 2006)(calling conveyances to family members without adequate compensation a "badge of fraud"). Also, the evidence in the record shows that Fasi's checks to William from his business "PT Investments" were mostly in large, even amounts. Pl.'s Memorandum in Response 104-16 (Doc. 13-1)(showing amounts such as $4,000, $10,000 and $50,000). Plaintiffs distinguish these "broad" amounts from more "specific" amounts typically associated with the purchase of goods and services. *See id.* at 77-80 (comparing a check to William from Fasi's personal account in the "specific" amount of $2,291.23).

Payments made, between family members, in large, even amounts of money are not necessarily fraudulent. But the allegations here are not the type of conclusory or speculative assertions that the court should not consider. *See Shrader*, 633 F.3d at 1239 (explaining that the court must disregard conclusory, speculative statements in the complaint). Plaintiffs need only make a prima facie showing of personal jurisdiction at this stage, and the question of whether the transfers in question were fraudulent in nature and responsible for the current litigation is precisely the sort of factual dispute that the court must resolve in Plaintiffs' favor. *See id.*

4

Consequently, the court concludes that the litigation in this case does arise from the activity described in Plaintiffs' pleadings.

Having found that this litigation arises from the activities in question, the court must also determine whether William "purposefully directed" these activities at Utah, or "purposefully availed" himself of the "privilege of conducting activities within the forum State" such that he has the necessary "minimum contacts" required for specific jurisdiction. *See Int'l Shoe*, 326 U.S. at 316; *Hanson v. Denckla*, 357 U.S. 235, 254 (1958); *see also Dudnikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 1071 (10th Cir. 2008) (discussing the relationship between the "purposefully availed" language and the "purposefully directed" language).

The Plaintiffs allege several instances of William "purposefully directing" activity at Utah: soliciting Fasi and his sons to come to Alaska for guided trips; selling and mailing firearms to Fasi; selling firearms on consignment for Fasi; arranging to have bullets and bullet casings brought from Utah to Alaska; and receiving payments from Fasi's Utah company, drawn on Utah banks. *See* Pl.'s Memorandum in Response 4-8 (Doc. 13). Essentially, this business relationship, insofar as it took place in Utah, involved phone calls, letters, and mailed firearms.

The phone calls and letters, in isolation, are probably insufficient to establish that William purposefully directed his activities to Utah, however they do serve as evidence of an ongoing relationship. *See Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1278 (10th Cir. 2005)("Although phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts, such materials provide additional evidence that [the defendant] pursued a continuing business relationship with a Utah corporation.")(internal quotation marks and citation omitted). Further, the quantum of communication is not dispositive on the nature of this relationship. *See id.* at 1279. It is undisputed that William either conducted $200,000 of

business with his brother and his brother's Utah company, or accepted $200,000 of fraudulent transfers from his brother and his brother's Utah company. If anything, the lack of extensive negotiations or detailed contracts governing the exchange of hundreds of thousands of dollars is indicative of a strong business relationship rather than a non-existent one.

Further, William shipped guns to his brother in Utah. As such, he was required to, and likely did, use the services of a Licensed Firearms Dealer in Utah. *See* Pl.'s Memorandum in Response 6 (citing to the Deposition of Fila Filagia) (Doc. 13); *See also* 18 U.S.C. 922(a) (2012)(making it illegal for anyone other than a licensed firearms dealer to receive a firearm through interstate commerce). Contracting with a separate business entity in Utah to facilitate his business relationship with his brother in Utah is strong evidence that William "purposefully availed himself of the privilege of conducting activities within the forum state."

Regardless of whether William's conduct is analyzed as "purposeful availment" or "purposeful direction," to defeat personal jurisdiction based on minimum contacts, William would have to show that his activity in Utah was "'so random, fortuitous, or attenuated that it cannot fairly be said that [he] should reasonably anticipate being haled into court' in Utah." *See Pro Axess*, 428 F.3d at 1279 (quoting *Burger King*, 471 U.S. at 486) (describing defendant's burden); *see also Dudnikov*, 514 F.3d at 1071. A business relationship with a Utah entity (albeit his brother) that extends over several years, earns William $200,000, and requires the services of a separate Utah business, is simply not that sort of random, attenuated activity. Consequently, the court finds that William has "minimum contacts" with Utah.

### 2. *Fair play and substantial justice*

In the second stage of analysis, the defendant "bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction

6

unreasonable." *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011) (internal quotation marks and citation omitted).

> This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id.* (internal quotation marks and citation omitted).

William makes only one argument in this regard; he argues the burden of travelling from Alaska to Utah to resolve the case. Def.'s Reply 3 (Doc. 14.) Though travel from Alaska to Utah is not insignificant, this factor by itself cannot be dispositive; any out-of-state defendant arguing against personal jurisdiction will have some burden of interstate travel to defend the suit. Despite William's argument to the contrary, the court also considers it relevant that he occasionally travels to Utah to visit his parents here. *See* Def.'s Affidavit 2 (Doc. 10-1)(admitting that he has travelled to Utah three or four times in the past five years); *compare Pro Axess*, 428 F.3d at 1280 (noting that the defendant's headquarters in France was a substantial distance from Utah, but that defendant had "demonstrated his ability to journey to the United States" before).

William makes no reference to the forum state's interest in resolving the dispute, Plaintiffs' interest in receiving convenient and effective relief, or the interstate judicial system's interest in obtaining the most efficient resolution of controversies. These factors predominantly weigh in favor of Utah jurisdiction.

First, at least one of the plaintiffs is a Utah resident, Pl.'s Response Memorandum 2 (Doc. 13), and "States have an important interest in providing a forum in which their residents

7

can seek redress for injuries caused by out-of-state actors." *Pro Axess,* 428 F.3d at 1280 (internal quotation marks and citation omitted).

Second, Plaintiffs have an interest in convenient and effective relief in Utah. As Plaintiffs point out, and William does not dispute, Plaintiffs are scattered throughout the United States and have already "been forced to focus their efforts against Fasi Filiaga at his residence in Utah." Pl.'s Memorandum in Response 10 (Doc. 13.)

Third, Utah jurisdiction corresponds with the interstate judicial system's interest in obtaining efficient resolution to the case. "This factor asks whether the forum state is the most efficient place to litigate the dispute." *Pro Axess,* 428 F.3d at 1281 (internal quotation marks and citation omitted). Relevant to this inquiry are "the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (internal quotation marks and citation omitted). In this case, the alleged fraudulent transfers underlying this case are closely connected to Utah, and Plaintiffs are suing under Utah substantive law. Further, Fasi Faliaga, likely a key witness in this case, is still located in Utah. *See* Mot. Hr'g Tr. 5 (Dec. 15, 2011)(noting that Fasi Faliaga is serving time in the Gunnison, Utah prison).

Without considering the shared interest of the several states in furthering fundamental social policies, which neither party addressed, the court nevertheless finds that William has not met his burden of "presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Therefore, the court concludes that Utah jurisdiction is reasonable under the circumstances.

## CONCLUSION

Based on the above analysis, it is hereby ordered that Defendant's Motions to Dismiss (Doc. 9) be **DENIED** because Utah jurisdiction over the Defendant does not offend due process.

DATED this 4th day of April, 2012.

BY THE COURT:

_____
SAMUEL ALBA
United States Magistrate Judge